John Schwartz, Center for a Sustainable Coast, and Karen Graney Before I explain why the claims in this case are addressable, I'd like to briefly address why courts reviewing agency action should be authorized to admit extra record evidence to show that the agency overlooked relevant factors. This Court's most frequently cited case for admitting extra record material is Preserve Endangered Areas of COPS History v. the Corps of Engineers, called Peach, and according to that case, the Ninth Circuit specified that a court may go beyond the administrative record only where one of four exceptions applies. But when Peach was decided, the Ninth Circuit had already recognized a fifth exception, which is when the agency overlooked relevant factors. Mr. Schwartz, what relief do you want? For this part of the case, we would like the court to expressly recognize that district courts are authorized to admit extra record material to show that an administrative agency overlooked relevant factors. How would that help you? Because in this case . . . No, what . . . How are you made whole? Well, the court excluded two extra record documents that we sought to supplement the administrative record. I understand that. The doc is there. Do you want the doc removed? Yes, that is part of our remedy. Are you familiar with Rule 19 of the federal rules? Yes. Indispensable party. Yes, I am. Why should you have sued the doc owner? Because this is a claim under the Administrative Procedure Act, and if the permit holder wants to participate, then they would seek to intervene under Rule 24. A permit holder already has a doc, so the remedy is to knock the doc down, and he's not a party. So that is part of our remedy. We can have redress even without the doc being taken down, an order setting aside the permit authorizing the doc's existence. So if you don't want the doc down, and you just want . . . It's a hypothetical case, isn't it? I'm not saying we don't want the doc down. A hypothetical case in which you posit some facts. That is incorrect, Your Honor, and I can explain why. So I will move on from the extra record material, since what you're asking about really gets at the redress. And there's three points I'd like to make about why this case is redressable. First, the permit issued by the court authorizes the doc's use, and it has no expiration date. So this is distinguishable from cases where the permit authorizes the discharge of fill material, for example, or only authorizes construction, or where the plaintiffs only sought to enjoin construction. The district court here said we clearly sought relief broader than stopping construction, that we want the doc removed even after it's constructed. So point number one, is there still a core permit authorizing that doc's use? Let me stop you. If the letter of permission is vacated, does that mean the doc gets removed, or does the owner just know that the doc's out there? Somebody may or may not raise an issue with it, but he has a doc without a permit expressly authorizing it. Right. And our point is that . . . So we have two types of harm here. One is the presence of the doc harms our client's aesthetic interest, and the primitive values of Cumberland Island, their interest in that. The second is a procedural right that was violated, and the courts have recognized, this court and the Supreme Court, that when a procedural right is violated, and that right is designed to protect a concrete interest, then there's redress if there's some possibility that the agency will reconsider its decision. So that's in Cahaba Riverkeeper, which refers to some possibility. This is different than the heightened standard for redress when you're talking about regulation of another party. So for procedural harm, we just have to show that the court could change its mind on remand. And so even if the case is remanded back to the agency without setting aside the permit, just giving the court more time to investigate and to comply with NEPA, which we can contend they did not comply with, the court has an opportunity to see, well, maybe we didn't make the right call here. For example, Cumberland Island's enabling legislation states that the island shall be permanently preserved in its primitive state. That was established in 1972. The court's administrative record here didn't even use the term primitive, but that's the guiding principle for this national seashore. So if the court goes back and says, well, we just didn't even realize that that was required, they may change their mind. For them to say here that they might not enforce it, may not force them to take the dock down, that's putting the cart before the horse. And it really is, to some extent, predisposing the outcome of what the court may order on remand. Because we never really know, in a NEPA case, frankly, what the administrative agency will do on remand if there's a violation, right? Right. And that's why the Supreme Court has recognized you don't have to show that the agency will change its decision. It's the procedural, the procedure that they go through to make that determination. They have to take a hard look at all the reasonably foreseeable impacts from it. They haven't done that here yet. They didn't even subject it to public notice and opportunity for comment because they made a determination that this would not have public opposition. Which was really facially unreasonable for a dock, a private dock on Cumberland Island. But that's, we're not addressing the merits. For standing, the court should assume that we prevail on the merits. And getting, Judge Huffenberg, to your question about that the permit holder is not here. The cases that the district court relied on in saying, well, it's a non-party and she can't force them to take it down. Those cases talk about where the harm is caused by a party, by a non-party, and that the defendant has no control over. So the cases she cited was this court's decision in Jacobson versus Florida Secretary of State and Lewis versus Governor of Alabama. And in those cases, the Florida Secretary of State . . . Locked up and locked down. That's half of our claim. You have to have it down, don't you? For redress? Yeah. Otherwise, it's nothing but, I'm speaking for myself, it's a hypothetical case. No. Your Honor . . . If you don't want the dock down, then you simply want a declaration that the court went through the wrong procedures, period. It doesn't help me at all, just I'm straightening the court out. So my time has expired, but I would like to respond to that comment because it misunderstands what our claim is about. We have claims under NEPA and under the enabling legislation for the National Seashore. I understand that, and my point is it doesn't matter what your claim is. If you don't want the dock down, all you want is a declaration that the court did something wrong and we can't . . . it's a provisional decision and Article III won't allow us to do it.  Judge Dofleit, you are wrong that we don't want the dock down and the court, the district court recognized that we asked for the dock's removal. Then you should have joined the dock owner. We don't have that right. They can intervene. Rule 19 requires it. It does not require it because . . . Rule 19, Council Rule 19 forbids the district court from proceeding if what you want is the dock down. It prohibits it. You have to join the party. We're not asking for the court to issue an injunction to take the dock down, but what we're saying is that by finding that the dock is either . . . so it can either be remanded to the agency for further NEPA review or the court can set aside the permit. If the court sets aside the permit, what Bennett v. Speer, the U.S. Supreme Court, in a case that's I think most similar to this, the court said it is the coercive effect on the non-party that provides the redress. Right now, you, I would think, wouldn't have any ability . . . I mean, I guess you can sue anyone you want, but you wouldn't be able to effectively sue the dock owner because right now the dock is perfectly legal because it's permitted, right? Yes. So, it would have been useless to sue the dock owner. What you really need is for the agency to reconsider the permit. That's what we're asking for, and I just want to be clear, our procedural claim under NEPA, we can have redress just by remanding it back to the agency because they could reconsider their decision. The court . . . to say that the court won't make them take it down is that they haven't gotten to that point. But under the Seashore Act, our request is to remove the dock because right now it impairs the primitive character of Cumberland Island. When you say you haven't gotten to that point, what is the point you're talking about? The point of the Corps making a . . . the U.S. Army Corps of Engineers making a determination as to whether they will compel the dock owner to take it down. They will compel the dock owner. Right. They can't make that decision until they . . . Just a minute. Suppose . . . on what basis would they compel the dock owner to take it down? On our decision or the district court's decision? Presumably if this court's decision, other than the extra record, would get at the issue of redress. Do we have stand-in? No. Forget that. Where the cause of action is granted and the district court says, the Corps, you did wrong and you got to take it down in effect. If the court does right, it'll take it. But the point I'm making is there's going to be another lawsuit involving the property owner and what we say, since they weren't a party, won't mean a thing. Your Honor, that is not correct. Just to clarify what you're asking about what the court would do, if this got remanded back to the district court, the district court would review the merits of our case. If we prevail, when the district court would remand the decision back to the Army Corps of Engineers for further investigation, they can do that with or without vacatur. That means they could either let the permit stay in effect during that administrative review or they could vacate the permit. Most likely the court would leave the permit in effect while the Corps of Engineers reviews this under NEPA. Just the mere determination by the district court that the Corps of Engineers violated NEPA redresses the procedural rights that were harmed by approving this without providing public notice and without looking at the impacts that they were required to look at. Isn't your real argument that you didn't get notice? That's part of our argument, but it's not only an argument. That's the first point in your argument, as I see it, is no notice. So what gave you the right to notice? NEPA, the National Environmental Policy Act. No, it's the NEPA. You either got notice by the Constitution or a statute. It's the statute, NEPA, the National Environmental Policy Act. Said that you were entitled to notice here. Notice before the decision was made. If you were not entitled to notice, where are you? We were entitled to notice, but it wasn't provided. Just please answer. If you're not entitled to notice, where are you? Well, even if we were not entitled to notice, there were other NEPA violations that we alleged. If you're not entitled to notice, what can you litigate? Well, still we could litigate the failure to take a hard look at the environmental impact, the failure to consider that this is in Cumberland Island National Seashore, which states that- You could do that at any time. ... to be permanently preserved in its primitive state. You could do that at any time. No. But you didn't have notice, and notice did not matter. So why couldn't you do it at any time? Well, the 28 U.S.C. has a six-year limit for suing over agency action. Let's back up. If you're not entitled to notice, where are you? I'm sorry, Your Honor, I am not following- Your argument is you had to have notice, and let's assume that you weren't entitled to notice. So let's assume that's the law, you weren't not entitled to notice. If that's so, then what is the limit in terms of time that you can bring this lawsuit? Six years. Six years? Yes, Your Honor. Okay. Thank you. I think you'll still have your seven minutes on rebuttal. Okay, thank you. Mr. Gray for the U.S. Army Corps. It pleases the Court. My name is Michael Gray. I'm here on behalf of the United States Army Corps of Engineers. The district court dismissal, for lack of saying, should be affirmed because there's no redressability in the narrow and limited circumstances presented here, even though this is a NEPA claim. Here's my question. It seems like your argument would have us presume that if the Corps rescinds the permit, that the dock owners will just say, who cares? Don't we ordinarily assume that in our decisions that people will comply with the law? It seems like these people thought they needed a permit or else they wouldn't have applied for it in the first place. Why does our standing decision need to turn on the likelihood of them just ignoring the permit being rescinded? What this court has said in a number of cases is that where there's a third party who's absent from the litigation and would not be bound by the judgment, that it won't presume, and the Supreme Court said it as well, that just the force of its opinion will be enough. It wouldn't be the force of our opinion, though. I don't anticipate, although I speak only for myself, that our opinion would say this permit should be rescinded. I think our opinion, if we agreed with Sustainable Coast, would say there was a NEPA violation and the District Court should look at this and determine whether there's a NEPA violation, and if so, remand to the Corps to carry out the process, at which point maybe the permit gets granted, maybe it doesn't. But under your argument, I don't know how anyone ever has a NEPA claim. We're not making that broad of an argument. I think the key here is that there's a second agency proceeding that interrupts. So the relief has to come from the court. The relief that they say will satisfy them is removal of the dock. All that's in front of the court is a NEPA process. Well, typically in a NEPA case where construction hasn't been completed, if you can imagine they sued, they got a preliminary injunction to stop construction, so there's no dock. We wouldn't be here saying there's no standing at that point because— At that point, if we or even the Corps were to say the dock shouldn't have been constructed, that ship has sailed. I'm not trying to make water puns here, but here the permit does authorize the continued use of the dock. So why isn't that different than the case that you're citing, the case as that you're citing? The key, again, is that the court's relief here would extend only to the end of that new NEPA process. Typically, the end of a new NEPA process, if the Corps would say, we've changed our mind, we're not going to grant this permit and there's no dock, then I think it's fair to presume that they're not going to go out and expend money on construction to build an illegal dock. But here the dock's constructed. You get to the end of that process, and that's sort of the end of the court's relief, but there's no— It's not, though, because the permit continues. I mean, it seems like under the argument that you're making, if a construction project weren't finished, the answer would be, well, they've already started construction and we can't make them tear it down, so that means there's no standing. I think the courts have just generally taken a practical view of this. And so you see it in several cases, a couple from the Fifth Circuit, one from the Third Circuit, on mootness, where the courts have said, well, this construction has gone so far, NEPA's a procedural action, we're not going to do it. Typically you're going to have, in a NEPA case, other claims other than we have an aesthetic injury and only removing the dock will redress it. You're going to have potential mitigation measures that could be adopted, other things that the NEPA process could inform. But here, there's nothing more for the NEPA process to do. And in cases like that, cases like the Thames River case from the Sixth Circuit or the D.C. Circuit— excuse me, the D.C. District Court case we cited with the bulkheads on the river, a NEPA process doesn't result—the court isn't, at the end of a NEPA process, necessarily going to say tear down this structure. And so the question is sort of taking a practical view of it. In that case, though, was there continuing authority to bless those bulkheads? Or wasn't the permit just to construct? It was a nationwide permit that governs, I think, construction. I'm not sure that the court necessarily, in that case, differentiated between construction and existence. For me, I think that's the key difference here. Again, if the permit said you can construct the dock, I agree. It's done. It's constructed. That's over. But the permit allows the party to keep using and maintaining and all that the dock. And so it seems like that's a continuing injury. And I just don't know why we assume that those owners wouldn't respect the— I mean, presumably they would be entitled—let's say they don't, and they think that the court made an erroneous decision under— let's presume for a second that the reason the court says it's not going to issue the permit is a public interest because of the seashore's primitive state. So we're not going to reissue you a permit. But at that point, the owners would be able to litigate that question with the court on the denial of the permit review. Then there would have to be a whole entirely separate agency action to go attempt to enforce it, which is within the court's discretion. They would have defenses in that. And nothing that this court says in this case is going to affect whether or not they can remove the dock. So that's—or choose to remove the dock or are forced to remove the dock. And that's the difference. Yeah, I would say, do we ever have jurisdiction to review a case? Does a party ever have standing to bring a case about a permit? Yes. In the vast majority of cases, the parties are going to sue before the permit activity is complete or there will be some sort of relief beyond undoing it that they can get. This is a very unusual case based only on the fact that they plead only a static injury and the only relief that can redress it is complete removal of the dock. And removal of the dock wouldn't happen as a result of the NEPA process. If you sent it back, you complete the NEPA process, they might say no more permit. But removal of the dock then would be an entirely separate agency proceeding. And that's where the difference comes in. So if the dock weren't there and they withheld the permit, then nothing more would be to happen and they would get redressed. That's the typical NEPA case. This is just different because of that second proceeding that would be necessary. And that's entirely within the Corps' discretion. Doesn't that assume that the owner would actually only remove the dock if it's a second proceeding? And aren't they much more likely to remove it if the permit no longer exists? They don't have to have the Corps saying remove it. Well, I'm not sure that that's true. I think there are lots of unpermitted docks out there that the owners don't remove. You're talking about expending funds to come out and take an existing dock down. But, again, there would have to be a second proceeding because presumably if we denied the permit on remand, they would challenge that denial. So you would have to have a second proceeding there no matter what, an entirely new judicial proceeding to decide whether that permit denial was okay or not. And then, you know, we don't know what the third party would do. You don't have to guarantee that you'll win and ultimately have relief to get standing, right? You have to show that the case could redress your injuries. And if the Corps had to do a full NEPA review with whatever all that entails and concluded that the permit—then it could conclude that the permit was wrongfully issued and could rescind the permit, at that point, to conclude that the injury is not redressable, we have to assume that the landowner will consciously violate the law. I don't know that we ordinarily make our standing decisions based on that assumption. I don't think you have to adopt that assumption because, again, the question is whether this Court can ultimately afford relief. And it's true, redressability is relaxed in these procedural injury cases. But I think it changes once you have the dock completed in these very limited circumstances. There may be other cases where a completed dock, you know— for example, if they sued about—they said, well, there's going to be impacts on manatees. Maybe we could do something in a NEPA process to ameliorate those impacts, adopt some other— but they're only taking it down, and the dock owner is not a party. So you don't have to presume that they're going to violate the law. If it would help the manatees to put some—I mean, I'm no biologist, right? But if it would help the manatees to put some pads on the dock, then I don't see why that is any different because we, through this decision, would not be ordering the dock owners to put pads on their dock to save the manatees. So, I mean, that seems just as kind of an extension of the ruling as— But that's relief that could be the direct result of the new NEPA process. What is the remedy of the dock owner? At the end of the day, when the dock owner says, we went through all the process the law requires, the government said you can build the dock, and now the government is taking it away. What's the remedy? Is there a takings claim here? There very well could be a takings claim. Could be a takings claim. Could be a due process claim in addition to a takings claim. Could be most anything, couldn't it? It could, and it could also be just a substantive claim that the court's decision was wrong. It's providing an opinion, I would think, which said after all this is done, and the dock was built in accordance with procedures that were followed by the Corps, and in reliance on that, which means the landowner is in the best possible position because he's not an interloper who just built a dock out there. Right. Okay, so now we say too bad, dock owner. No takings, no substantive due process violation. You take down the dock at your expense. I think we'd have a hard time writing that. I think that would be a pretty unlikely opinion from the court. And, you know, the Supreme Court has said redressability is relaxed, and we understand that. In the vast majority of NEPA cases, this is not a high burden to clear, but relaxed doesn't mean erased, and there has to be some limit. Let's say that the Corps had concluded that building a Hilton on Cumberland Island wouldn't attract a lot of opposition, and the Hilton got built, people had reservations, they were there. At that point, would there be any redressability for someone who didn't want the Hilton there? I think not, and I think that it's important to realize that, you know, presumably someone would notice that a Hilton was being built. Just as here, the plaintiffs were aware that this dock was being constructed before they filed the suit. They had the opportunity to come in and seek injunctive relief to prevent it. They didn't file the suit until after it was finished, and they say the only thing that will remedy is taking the dock down. Well, taking the dock down relies on either actions of a third party or the enforcement discretion of the Corps. It's not something that would be the direct result of this suit, which is only about the procedure. Understanding that typically the direct result of a new procedure could be the prevention of building something, but I think it changes when you're talking about taking it down because of the expense involved, because of the discretion involved, because the third party is not here. In most of the cases where the courts have said, yeah, we think we can order some remedy, but it was the government itself that was doing the work, not a third party. In a different case with a different dock. So I promise you're not conceding anything about this dock, but under ordinary permitting authority, could the Corps, based on new realizations about a particular facility's effects on wildlife, does the Corps have authority to rescind permits based on those types of realizations or not? Yes. These Section 10 Rivers and Harbors Act permits, the Corps expressly retains the authority to rescind the permit based on public interest factors. Typically that's exercised based on some obstruction of navigation. Section 10 is about navigation. It's about building structures that could be obstructions to navigation. So if the Corps rescinds permits, it's almost always a situation where there's some obstruction of navigation because that's its thing. The Seashore Act, which they complain about, that's a Park Service thing. The Corps consulted with the Park Service, and the Park Service had no objection here. So that wouldn't typically be the kind of thing that the Corps would rescind a permit over. Now it does have the authority because one of the permit conditions is always that the Corps can rescind the permit if it's in the public interest. So wouldn't that, I would think, take it out of the takings concern that was raised, if that's a feature of these permits in the first place? I think it could depend on the rationale. If it's a Seashore Act thing where we have private property and the Corps would say, well, we have a statute that says you can't have a dock here for some reason, I think that does raise serious takings concerns. If it's based on navigation, probably not. All the turtles are getting caught, and you didn't realize it when you permitted the dock. So in order to save the turtles, we need to take the dock down. That kind of thing. I don't know whether that would. I think it would be an interesting takings case. Fair response. Thank you. My time is up, but we would ask that the Court affirm. Mr. Schwartz. Thank you, Your Honor. A couple points about the question on the right to rescind. The Corps' regulations specify that they can re-evaluate and rescind the permit if they determine that information provided to the Corps during the review process was inaccurate or no longer true. And during the review process, the property owner who purchased this property 25 years after Cumberland Island National Seashore was created and was subject to understanding what the law required, the property owner stated that they were only going to build one house and that the house would not be built without the dock, that they needed the dock to build the house. Three or four months after they received permission from the Corps to build the dock, they applied to the county to subdivide their 90-acre parcels into ten homes, five on the marsh side and five on the ocean side. And the county approved that. Then that was appealed by some local owners down in Camden County, and that appeal has been stayed since then. They haven't moved forward with that. But the... Do we know what the basis for the stay was? Basis for the stay? I think they're waiting to see what happens here. That's what I thought might be the case. All right. We contacted the Corps before . . . What does that have to do with this case? Well, it gets to the question . . . Is that before the district judge? Was it before the district judge? We did raise that in front of the district judge, yes. Was what? We did raise that issue to the district judge. Was it litigated before the district judge? The zoning activity? Yes. We notified the district court of that. I know that. She struck that from . . . Was it part of the decision? No. All right. But my point is . . . You're telling us because you're interested in it. Well, because we notified the Corps and asked them before suing. The information was either no longer true or wasn't true, and asked them to reevaluate and take the permit away based on that, which they had the right to. They exercised their enforcement discretion not to do that. But the owner understands the rules of the National Seashore, and I think the owner probably also understood that it was unlikely that this would not face public opposition. So they don't have clean hands here in terms of saying, well, we reasonably relied on the Corps to issue this without any public notice. Mr. Gray did raise one point, which I'd like your response on, which is that your clients were aware of the dock during construction and didn't sue until it was complete. What's your response there? We did sue before it was complete. We just didn't add the Corps into the case until after it was complete. We initially sued the National Park Service, saying that they . . . They signed a document stating that they had no opposition, no objection to the dock being built. We sued saying that that was a violation of the Seashore Act. What the district court found was that they were not asked that question in their capacity as an agency, but rather in their capacity as an adjacent property owner, and they said it was not final agency action. Instead of appealing that, we brought a claim against the Corps, by which time the dock was constructed. We also . . . This is not part of the record, but we had an agreement with the property owner's lawyer. We wouldn't seek an injunction. They wouldn't try and use that against us for latches. We provided notice of the lawsuit before this was . . . When we filed it, we sent it to their lawyer. I want to address the issue about the claim by my friend, Mr. Gray, stating that we only pled aesthetic injury and that all that will satisfy us is removal of the dock. That is not true. That relates to our claim under this Seashore Act, but for NEPA, we can have redress just by sending it back to the agency to undertake the proper NEPA procedures. We claim this cannot be categorically excluded from NEPA review and that it should be subject to public notice and comment and to an environmental assessment. They actually did an environmental assessment here, but they didn't subject to public notice, which is required for an environmental assessment. But that's not in front of this Court. The merits of the NEPA claim are not in front of . . . But I just do want to make it clear. Our redress is broader than taking the dock down, although ultimately that is what would satisfy our interest in protecting Cumberland Island's primitive character. Lujan v. Defenders of Wildlife said, someone whose concrete interests have been harmed by a NEPA violation of standing to sue, even though they cannot establish with certainty that further review will change the outcome. It's just that it may change the outcome. There's some possibility. This Court also recognized that in Sierra Club v. Johnson, 436 F. 3rd 1269. Now, one point I want to make that, Your Honor, Judge Grant, you were addressing about the other cases and whether they also involved a permit for ongoing use. None of the cases cited by the Court and none of the cases cited by the District Court cited 33 CFR Section 325.6b, like Bravo. And that's the section that says the permit has no expiration date. The cases that are being relied upon by the Court are all cases where it was, for example, discharges of dredger fill material under Section 404 and the activity was already completed. This is not a situation where either the permit that authorized the activity is all the work is done or that there's no remedy that can be provided. There are certain types of cases where the harm cannot be undone. So the Ninth Circuit, for example, has recognized if you're talking about mining, you can't undo it. You can't put the minerals back in the ground. But even if you're talking about a completed highway exchange, the Court can order it taken down. It's not to say that they should, but they can. And the question for redress or mootness is not about whether the project has been completed, but is there some relief that the Court can provide? And here the answer is yes under both NEPA, but also by setting aside the permit, it would coerce a rational, proper owner to remove the dock. And thank you, Your Honor. Thank you. We appreciate your argument from both of you. We'll move to our next case.